**Ronald Dean BASS, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE of Missouri, Appellant.**

No. 51249.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 2, 1986.

William L. Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Robert D. Aulgur and Elaine R. Carlson, Sp. Asst. Attys. Gen., Jefferson City, for appellant.

Dubail, Judge, Kilker, O'Leary & Smith, Keith C. Zagar, Terry A. Parkinson and Dennis M. Devereux, St. Louis, for respondent.

CRIST, Judge.

Director appeals from a directed verdict of the trial court overturning the suspension of Bass' license on the ground Director had not proved Bass was driving with a blood alcohol content of .13 of one percent or more. We reverse and remand.

Bass was stopped for speeding on September 20, 1985. After noting Bass had a staggered gait, glassy eyes and a strong odor of alcohol on his breath, the arresting officer had Bass perform three field sobriety tests. After failing these tests, Bass was arrested and given a breath analysis test. The breath analysis showed .153 of one percent of alcohol in Bass' blood. Missouri law provides for the suspension or revocation of a license where the alcohol concentration shows .13 of one percent or more. § 302.505(1), RSMo (Cum.Supp. 1984). Bass' license was suspended and the suspension was upheld after an administrative hearing. Bass then requested and received a trial de novo.

To uphold the suspension, the trial court had to find (1) the suspect was arrested upon probable cause, and (2) the results of the chemical analysis showed a blood alcohol concentration of .13 of one percent or more. *Collins v. Director of Revenue,* 691 S.W.2d 246, 252[11] (Mo.banc 1985). In order to show the blood alcohol concentration, the test had to be performed (1) according to the techniques and methods approved by the Division of Health, (2) by persons possessing a valid permit, and (3) by using equipment and devices approved by the division. *Jannett v. King,* 687 S.W.2d 252, 254[2] (Mo.App.1985). All three of the requirements to show blood alcohol concentration were met in this case.

The court admitted into evidence 13 CSR 50–140.010 through .060 which contain the rules for determining blood alcohol content. The court also admitted the Type III permit of the officer who administered the test. This officer testified that the machine used to perform the test was an Alco-analyzer 2000. This breath analyzer is specifically approved in 13 CSR 50–140.050(1).

The seminal issue presented is whether the test was performed according to the techniques and methods approved by the

Division of Health. 13 CSR 50–140.060(10). These methods are:

(1) Fifteen minutes of observation to insure no smoking, vomiting or oral intake of any material,

(2) Place lever to 'take' position and follow printout directions,

(3) Have subject blow into breath port pipe until the 'ready' light illuminates,

(4) Place lever to 'analyze' position, and

(5) Read blood alcohol content from printout.

The officer who administered the test testified that he filled out a checklist as he performed the test. The checklist he filled out corresponded with the requirements of the Division of Health. His initials were placed on the left side of each step to show it was performed satisfactorily. He testified the breathalyzer test result showed Bass had a blood alcohol content of .153 of one percent.

A prima facie case was made Bass was driving an automobile with a blood alcohol content of .13 of one percent or more. *Collins v. Director of Revenue*, 691 S.W.2d 246, 253 (Mo.banc 1985). There was enough evidence on blood alcohol content to get past a motion for directed verdict at the end of Director's case grounded on failure of Director to specify the particular steps taken to show blood alcohol concentration and for failure to lay a foundation to get operator's checklist into evidence.

Reversed and Remanded.

KELLY, J., concurs.

SATZ, P.J., concurs in result.